# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Seth Berger, being duly sworn, hereby depose and state the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to the Charlotte Field Division. As an ATF Special Agent, I investigate federal violations related to firearms, including international and domestic firearms trafficking. I have participated in training and have both conducted and assisted on investigations of the exportation and smuggling of illegal contraband and merchandise including firearms and ammunition outside of the United States. As a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), I am empowered by law to conduct investigations of and to make arrests for federal offenses enumerated in Titles 18, 21, and 26 of the United States Code.

2. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause that on or about March 11, 2025, **Galo Dario ROJAS-NOBLECILLA** did attempt to smuggle firearms and/or firearm parts from the United States to Ecuador, in violation of Title 18 U.S.C. § 554.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all the information known to me and other law enforcement officers involved in this investigation. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation.

## APPLICABLE LAWS AND REGULATIONS

## SMUGGLING

4.      Section 554 of Title 18 pertains to the smuggling or attempted smuggling of goods from the United States. It states in relevant part:

> "whoever fraudulently or knowingly exports or sends from the United States or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States…shall be fined under this title, imprisoned not more than 10 years, or both."

5.      Generally speaking, exporters, shippers, and freight forwarders are required by U.S. law to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those filings are completed through the submission of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System ("AES"). AES is administered by the U.S. Department of Homeland Security, Bureau of Customs and Border Protection. SEDs and EEIs are official documents submitted to the DHS in connection with export shipments from the United States. Part 30 of Title 15, Code of Federal Regulations (C.F.R.), sets forth the requirement compelling exporters, also identified as U.S. Principal Parties In Interest ("USPPI"), to file an SED or EEI when shipping merchandise to foreign countries when the value of said merchandise exceeds $2,500 USD. In addition, 15 C.F.R. § 30.10 requires all parties to an export transaction to retain documents pertaining to the export shipment for five years from the date of the export.

6. Furthermore, even if an SED or EEI is not required, if one is filed it must be truthful. Specifically, Title 13 U.S.C. § 305 sets forth prohibited export information activities. It states in relevant part:

"Any person who knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED)…or the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years, or both."

7. Accordingly, any exporter (USPPI) who fails to file an SED pertaining to an export when required or files an SED containing false information, and does so knowingly, runs afoul of this section.

8. Thus, a violation of 13 U.S.C § 305 similarly serves as a predicate to sustain a charge of smuggling or attempted smuggling of goods from the United States contrary to 18 U.S.C. § 554. Consequently, even goods legitimately obtained, sold, and delivered overseas, can be "smuggled" for purposes of this section if laws and regulations governing exports, like Section 305, are violated.

**EXPORT CONTROL REFORM ACT (ECRA)**

9. As part of the National Defense Authorization Act of 2019, Congress enacted certain export controls, collectively known as the ECRA. Under that law, the Secretary of Commerce is granted the authority to establish ECRA's applicable regulatory framework.[1] Pursuant to that authority, the Department of Commerce ("DOC") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"). Among other items,

---

[1] 50 U.S.C. § 4812

the EAR restrict the export of items that could contribute to the military potential of other nations or that could be detrimental to United States foreign policy or national security. Importantly, the EAR impose licensing and other requirements for certain items to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL").[2] Item on the CCL are categorized by an Export Control Classification Number ("ECCN"), based on their technical characteristics. Items that are not assigned an ECCN are designated as EAR99, which is a broad, catchall category.

10. The EAR provide that when EEI information is filed, the filer is certifying that the EEI information is true, accurate, and complete.[3] Knowingly providing false or misleading information, or causing such information to be provided, in connection with the preparation and submission of "export control documents", including EEI filings, is a violation of the EAR.[4]

11. The EAR further prohibit certain exports, re-exports, and other conduct without a DOC-issued license, or an exception exists to the licensing requirements.[5] 15 C.F.R. §736.2(b)(1) prohibits the export of controlled items to listed countries without an export license granted by DOC.

12. Furthermore, 15 C.F.R. § 736.2(b)(10) prohibits any person, business, organization, or entity from proceeding with transactions with knowledge that a violation has occurred or is about to occur. Specifically, this section states that no one may:

---

[2] 15 C.F.R. Part 774, Supp. No.1.
[3] 15 C.F.R. § 758.1(f)
[4] 15 C.F.R. § 764.2(g)(1)(ii). 15 C.F.R. § 772.1 of the EAR provides a definition of an "export control document" which includes, inter alia, "Electronic Export Information (EEI) on the Automated Export System (AES) presented in connection with shipments to any country . . ."
[5] 15 C.F.R. § 736.2.

sell, transfer, export, reexport, finance, order, buy, remove, conceal, store, use, loan, dispose of, transport, forward, or otherwise service, in whole or in part, any item subject to the EAR and exported . . . or to be exported . . . with knowledge that a violation of the Export Administration Regulations… has occurred, is about to occur, or is intended to occur in connection with the item.

13. The ECRA criminalizes violations or attempted violations of the EAR. Moreover, 50 U.S.C. § 4819(a)(2)(D) specifically prohibits any person from "conspir[ing] or act[ing] in concert with one or more other persons in any manner or for any purpose to bring about or to do any act that constitutes a violation of [the ECRA], the Export Administration Regulations, or any order, license or authorization issued thereunder."

## PROBABLE CAUSE

14. On March 11, 2025, Galo Dario ROS-NOBLECILLA ("**ROJAS-NOBLECILLA**") attempted to travel via American Airlines flight #1748 from Charlotte Douglas International Airport ("CLT") to Miami, Florida. **ROJAS-NOBLECILLA's** itinerary indicated that he would transfer flights in Miami and continue to Guayaquil, Ecuador airport ("GYE") via American Airlines Flight 1483.

15. At CLT, **ROJAS-NOBLECILLA** checked two bags in with American Airlines. The two checked items were camouflaged duffle style bags which were checked in with American Airlines staff for transport to GYE. Once checked in with American Airlines at CLT, passengers would not be able to change the destination of, or have access to, the baggage until its arrival at GYE.

16. Routine security screening of the checked baggage conducted by the Transportation Security Administration ("TSA") indicated an anomaly with **ROJAS-NOBLECILLA's** baggage. A TSA screener could see on the X-ray machine and visibly observe there was a firearm in the checked baggage, and that it wasn't packaged properly. A subsequent physical inspection by a TSA supervisor of the baggage revealed artfully concealed firearm parts, including a fully functional FN 5.7mm lower receiver, two (2) upper slides, and one (1) empty magazine. Each part was wrapped in saran wrap, aluminum foil, bed sheeting, and then placed inside of a bed sheet plastic package. Upon TSA notification to law enforcement, the components were seized. **ROJAS-NOBLECILLA** was arrested by the Charlotte Mecklenburg Police Department for Carrying a Concealed Weapon/Gun, in violation of NC GS § 14-269(a1).

17. Following **ROJAS-NOBLECILLA's** arrest, his mother, Mariela Isolina Noblecilla SOTOMAYO, was interviewed by law enforcement. In that interview, SOTOMAYO explained that her son was carrying the bag to Ecuador for another person, Maria Rosa Montesdeoca. SOTOMAYO stated that Maria Rosa Montesdeoca would pay $250 USD per bag that was transported to and from Ecuador. SOTOMAYO explained that ROJAS-NOBLECILLA had transported many bags (always similar in color and size) over the last few months.

18. On April 1, 2025, ATF SA Seth Berger and ATF SA Caitlin McGourty interviewed Maria Rosa Montesdeoca, at 12922 Indian Hills Lane Charlotte, NC. (hereinafter referred to as Maria). Also present was, Jean Zurita-Lopez, and Maria's daughter, Maria Rosa Parra-Montesdeoca (hereinafter referred to as Parra-Montesdeoca). Parra-Montesdeoca assisted in translating as her mother, Maria spoke better Spanish than English. Maria explained that **ROJAS-NOBLECILLA** has transported bags for her approximately 6 times before this incident.

Furthermore, Maria stated that it's not just him, his mother and other family members have transported bags for her in the past. When asked about the payment to **ROJAS-NOBLECILLA**, Maria stated that she deposited $250 to **ROJAS-NOBLECILLA's** wife in Ecuador and $250 to his mother here in the US. When asked who packed the bags, Maria expressed that she did. **ROJAS-NOBLECILLA** picked up the two camouflage bags from this residence prior to going to the airport.

19. On Friday, March 14, 2025, ATF SA Berger contacted Customs and Border Protection (CBP) Officer Andrew Hall for assistance with intelligence and previous encounters of **ROJAS NOBLECILLA**. According to CBP, **ROJAS NOBLECILLA**, has had previous CBP encounters involving transportation of items between the United States and Ecuador. Specifically, on November 1, 2024, **ROJAS NOBLECILLA**, was encountered inbound at John F. Kennedy International Airport (JFK) by Customs and Border Protection (CBP) after flying aboard JetBlue Airways flight B6 1770 from Guayaquil, Ecuador, and found to be carrying controlled substances that were seized. **ROJAS NOBLECILLA** was found to be in possession of two suitcases which were filled with prescription required medications and two other medications that are classified as controlled substances by the DEA. The prescription required medications included 38 pills of Hydroxyzine Hydrochloride, 32 vials of Lidocaine Hydrochloride and 8 pills of Pseudoephedrine Sulfate, which is a precursor to the production of Methamphetamine. The controlled substances found included 10 pills of Tramadol (labeled as Zaladiar) and 40 pills of Zopiclone. Both of these drugs are classified as Schedule IV drugs by the DEA. The subject told CBP he did not have any prescription paperwork for any of the medications in his possession. CBP system queries also revealed that **ROJAS NOBLECILLA** was inspected by CBP on his March 7, 2025, entry at Fort Lauderdale Airport (FLL) and was

found to be in possession approximately 35 pounds of cheese. CBP system queries of the contact # (704) 315-3976 revealed that this number had been used as the U.S. point of contact for 21 visa applications for individuals originating in Ecuador.

20. Export license determination requests were submitted to the U.S. Department of Commerce. The Commerce Department's license determinations found that the FN 5.7mm handgun lower receiver, FN 5.7mm handgun upper receivers, and FN 5.7mm handgun magazine were listed on the CCL; an approved export license is required prior to the export of these commodities to Ecuador.

21. A Special Agent with the U.S. Department of Commerce conducted a review of Commerce's export license database; no applications nor approved export licenses involving **ROJAS-NOBLECILLA** were identified. Accordingly, **ROJAS-NOBLECILLA** was not authorized to export the firearm components to Ecuador. Additionally, a Special Agent with the US Department of Commerce searched the Commerce export licensing database for known identifiers associated with Maria Rosa Montesdeoca. No responsive applications or approved export licenses were identified.

## CONCLUSION

22. Based on the above facts and information, I submit that there is probable cause to believe that Galo Dario **ROJAS-NOBLECILLA** violated Title 18 United States Code 554 et. seq.

_____
Seth Berger, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me this 11th day of April 2025,

_____
Honorable Susan C. Rodriguez
United States Magistrate Judge